## TOM JONES V. THE STATE.

No. 16337.   Delivered June 6, 1934.
Appellant's Rehearing Denied October 31, 1934.
Reported in 75 S. W. (2d) 683.

The opinion states the case.

*Wagstaff, Harwell, Wagstaff & Douthit* and *Scarborough & Ely*, all of Abilene, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, three years in the penitentiary.

We held good an indictment similar to the one in this case, in Norman v. State, 121 Texas Crim. Rep., 433, 52 S. W. (2d) 105.

It would seem plain that since the provisions of article 42, P. C. make him punishable for the felony actually committed, who while in the execution of some other felony does some act by mistake or accident which if voluntarily done would be a felony,—an indictment need not charge an intentional collision or killing which alleged, as in this case, that appellant drove a car on a public street while under the influence of intoxicating liquor, and that while so doing he did by mistake and accident strike and collide with a car occupied by Mr. Perkins, thereby causing the death of Perkins. The very terms of art. 42, supra, negative the proposition that the striking of Perkins, or his death, should be alleged to be voluntary or intentional.

There were many special charges asked upon this trial and refused. Also many exceptions were taken to the court's charge as given, some of which apparently caused changes in the charge from the original draft. As we view it, the court's charge gave in an affirmative manner the law applicable to the defensive theories. As illustrative, we quote from said charge as follows:

"8.   Before you can find the defendant guilty of murder as charged, you must find and believe from the evidence beyond a reasonable doubt that at the time of the collision of the cars on Grape Street the defendant Tom Jones was under the influence of intoxicating liquor, and if you have a reasonable doubt as to whether or not the said Tom Jones was under the influence of intoxicating liquor, you will acquit the defendant of murder and so say by your verdict.

"8-a.   You are further instructed that should you believe from the evidence beyond a reasonable doubt that the defendant was under the influence of intoxicating liquor at the time .of the collision in question, yet you must further find and believe from the evidence beyond a reasonable doubt, before you can convict the defendant, that the defendant while in such state of intoxication, if any, drove his car into and caused it to collide with the car driven by Eli Perkins and thereby caused the death of the said Eli Perkins.

"8-b.   You are instructed that even though you believe and find from the evidence that the defendant was under the influence of intoxicating liquor while operating his car at the time of the collision, he would not be guilty of murder if he was operating the same in the manner that it should be operated by one not under the influence of intoxicating liquor.

"8-c.   Before you can find the defendant guilty of murder as charged you must find from the evidence beyond a reasonable doubt that the fact that Tom Jones was under the influence of intoxicating liquor at the time of the collision, if he was under the influence of intoxicating liquor, was the cause of the collision or contributed to the collision, and if you have a reasonable doubt in your mind as to whether or not his being under the influence of intoxicating liquor, if he was under such influence, caused the accident or contributed to the same, you will acquit him of murder and so say by your verdict.

"8-d.   If you believe from the evidence that the car being driven by the deceased Eli Perkins was caused by the said Eli Perkins to run into or collide with the automobile being driven by the defendant Tom Jones, you will find the defendant not guilty, or if you have a reasonable doubt as to whether or not the car being driven by the said Eli Perkins was so caused to run into, or collide with the car being driven by the defendant, Tom Jones, you will find the defendant not guilty of murder."

In our view the above sufficiently presented the propositions that the jury must find beyond a reasonable doubt that the acts of appellant, while engaged in committing a felony, caused the

death of deceased, and that said death did not result from the acts of deceased.

The unfortunate collision, according to two eye-witnesses, took place at a point on a well lighted street in the city of Abilene, Texas, said street being forty feet wide at the point of collision. These two witnesses were in a car driving north, and were about three or four feet from the east side of the street. They affirmed that deceased was on the west side of said street going south in a car. One of said witnesses testified that deceased was about as near to the west side of the street as these witnesses were to the east side. North of where the collision occurred was a culvert and at same the street narrowed to about twenty-seven feet in width. Mr. Nixon, one of said witnesses, testified that his car was about forty feet south of said culvert when the collision took place. Appellant was coming up behind the car occupied by these witnesses, and was going north at what was testified to by another witness to be sixty miles an hour. Fowler, the other occupant of the Nixon car, testified for the defense. He said the wreck occurred about forty feet south of the culvert mentioned, and that the collision took place about even with the rear wheels of the car occupied by these witnesses. Fowler got out and went over and said the Jones car,—by which we designate the car occupied by appellant,—was on the west side of the center of the street. The Perkins car, being the car occupied by deceased, was then close to the west side of the street. He further testified that he saw Perkins some hundred and twenty feet up the street before the collision, saw him plainly, saw him cross the culvert, and then pull his car back toward the west curb of the street, continuing south, and that Perkins drove some forty feet south before the collision. This witness and others testified to the width of the car as being less than six feet, fenders and all, and that from the west side of the Nixon car where it was at the time of the collision, to the center of the street there would be a space of some ten feet, and if the Perkins car was as close to the west curb as the Nixon car, there would be a space of ten feet from the east side of said car and the center of the street. The effect of the testimony of these witnesses was to show that between the Perkins car and the Nixon car, at the point of collision, there was a clear open space of at least twenty feet.

On the question of appellant being under the influence of intoxicating liquor at the time, the testimony is in a condition

of conflict, but seems ample to support the finding that appellant was then under the influence of such liquor.

There are more than sixty bills of exception in the record, all of which have been examined, but most of which we deem not to present any error. Bill of exceptions 44, however, brings forward a complaint of the argument of the district attorney in closing the case for the State. We quote from what is shown in said bill as the argument made:

"I too could tell you something, because I know Tom Jones. Less than two years ago I gave him a chance when he sat there and plead for mercy for driving a car while intoxicated. I let him off reasonably, and gave him a chance."

Exception to this argument was reserved. The court told the jury not to consider same. We consider the harmful character of such argument so manifest as that same could not be cured by an instruction to the jury not to consider it. The district attorney thereby put before the jury not only the fact that appellant, who was not a witness in the case,—had before the present occurrence driven another car while intoxicated, but also that he had appeared in court before the district attorney and there plead for mercy, and had been given a chance by said district attorney, who let him off reasonably. It would be wholly impossible for any one to appraise the possible harm of conveying to the jury in any case that the person on trial had before the instant occurrence committed a crime of the same character. This appellant was not given the lowest penalty for the offense charged against him. He was asserting, upon the testimony of a number of witnesses, that he was not intoxicated, and was not driving a car while in that condition. Manifestly proof made by the district attorney in his argument of the fact that appellant had theretofore, while intoxicated, driven a car on a public street, would have much weight with the jury. We regret that we cannot agree with the learned trial judge in his qualification to this bill in which he sets out certain argument made by appellant's attorney regarding his personal knowledge of and friendship for the appellant, which appears to the trial judge to have called for and probably justified the argument here complained of.

Bill of exceptions No. 50 sets out that appellant did not testify, and that a special prosecutor in the case in argument said to the jury as follows:

"Now, gentlemen, so far as the record shows, these are all that saw him. You do not know where he went the rest of that night. We do not know where he and Stanley Smith drove

over the town here and there wandering about; we do not know who they saw and talked to or who saw and talked to them. They would be in a position to testify as to those facts."

This was excepted to as a reference to appellant's failure to testify. We think this exception well taken. The argument specified two men, one of them appellant, who of necessity knew certain facts which had not been produced, and which argument called the jury's direct attention to the fact that "They would be in position to testify to these facts." Appellant was one of the parties referred to as "They," and we are constrained to hold such argument violative of the statute against reference to the failure of the accused to testify. There are numerous other complaints of argument which we do not discuss because discussion thereof would lengthen this opinion, and which arguments may not be repeated in the event of another trial. It is to be regretted that occurrences of general character similar to the one before us are of such frequency upon our public roads as that the feelings, sympathies and resentment in the minds of jurors against such things and persons indulging therein can easily be aroused, and care should be taken in the trial of these and every other case to see that no abuse of such situation is indulged in argument.

Appellant raises a number of other questions in his exceptions to the court's charge and his special charges, but we do not find error in any of them, and hence do not discuss same.

For the reasons mentioned the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The judgment of conviction was reversed on June 6, 1934, for the reasons stated in the opinion of that date, but the indictment was held good. Appellant filed a motion for rehearing in which it is strongly urged and argued that we were in error in so holding, and we are asked to again review that question and hold the indictment bad.

It becomes our duty to construe and apply the law giving effect, if possible to all the provisions thereof, and this is no easy matter where some provisions are in apparent conflict with others.

Omitting formal averments, the count of the indictment under which appellant was convicted alleged that appellant "* * * did then and there unlawfully drive an automobile upon a public street within the limits of an incorporated city within

this State, to-wit: Grape Street within the limits of the City of Abilene, Texas, while he the said Tom Jones was then and there under the influence of intoxicating liquor, and he the said Tom Jones did then and there while so driving said automobile as aforesaid, through mistake and accident kill Eli Perkins by then and there driving said automobile into and causing it to collide with another automobile in which the said Eli Perkins was then and there riding thereby jarring and bruising the body of him, the said Eli Perkins, causing injuries to the body of him, the said Eli Perkins, from which injuries the said Eli Perkins then and there died."

It is appellant's contention that article 42 P. C. has no application to a state of facts here present, and that under our statute defining murder (article 1256 P. C.) an indictment to be sufficient to charge such offense, must allege that the killing was voluntarily—intentionally—done. In support of his position appellant refers us to Crutchfield v. State, 110 Texas Crim. Rep., 420, 10 S. W. (2d) 119; Miller v. State, 112 Texas Crim. Rep., 125, 13 S. W. (2d) 865; Bookman v. State, 112 Texas Crim. Rep., 233; Shannon v. State, 36 S. W. (2d) 521. It may be conceded that in the ordinary case of murder where the facts incident to the killing do not call into operation some other article of the statute appellant's contention would be sound. That it is not always sound is demonstrated in Whiteside v. State, the opinion on the first appeal being found reported in 111 Texas Crim. Rep., 116, 12 S. W. (2d) 218, and on the second appeal being reported in 115 Texas Crim. Rep., 274, 29 S. W. (2d) 399. In that case under the facts article 1206 P. C. became operative, which article reads in part as follows: "Although it is necessary to constitute homicide that it shall result from some act of the party accused, yet if words be used which are reasonably calculated to produce and do produce an act which is the immediate cause of death, it is homicide. * * *"

It was held that an indictment which alleged facts bringing the killing within the purview of said article was sufficient to charge the offense of murder.

Article 42 P. C. is a general statute which reads: "One intending to commit a felony and who in the act of preparing for or executing the same shall through mistake or accident do another act which, if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually committed."

It was the State's contention that appellant, while intoxi-

cated, was driving an automobile upon a public street in the City of Abilene, Texas, which act of drunk driving was a felony under the provisions of article 802 P. C., and that while in the act of drunk driving, by accident, but as a direct result of such drunk driving, he killed deceased by driving his (appellant's) automobile into one in which deceased was riding. If appellant had *"intentionally"* driven his automobile into the one occupied by deceased thereby causing his death appellant would have been guilty of murder. Art. 42 says that if while executing a felony one by accident does a thing which, if done intentionally, would be a felony, he shall receive the punishment for the felony actually committed. In drawing the indictment the averments were appropriate in making article 42 P. C. operative, and we must adhere to our original opinion in holding said indictment sufficient, following Norman v. State, 52 S. W. (2d) 1051.

It is true, as urged by appellant, that when said art. 42 became a part of our Penal Code, no such thing as automobiles were known, and that application of said article in the reported cases was where a person intended to kill one party and by accident killed another, but we find ourselves unable to ignore said article under the facts presented in the present record, or to say that it was the intention of the Legislature that said article should have application under some particular state of facts but not in others, where each state of facts appears to fall under the provisions of said statute.

Article 1149 P. C. provides as follows:

"If any driver or operator of a motor vehicle or motorcycle upon the public highways of this State shall wilfully, or with negligence, as is defined in this title in the chapter on negligent homicide, collide with or cause injury less than death to any other person upon such highway, he shall be held guilty of aggravated assault and shall be punished accordingly unless such injuries result in death, in which event he shall be dealt with under the general law of homicide."

Appellant contends that said article defines the offense of injuring or killing one with an automobile, and fixes the punishment therefor; that it is a special statute dealing with injuries or death by automobiles, and therefore article 42 P. C. has no application. We cannot agree that appellant's position is sound. Art. 1149 takes no account of such injury or death resulting during the commission of a felony by accused.

It is further appellant's contention that under said art. 1149 if the injury was intentionally inflicted by the use of an

automobile and death results it would be murder, but if negligently done it would be negligent homicide. Appellant then reasons that the driving of his automobile while he was drunk was negligence per se, and therefore, not intending to kill deceased, appellant would be guilty only of negligent homicide. Again appellant overlooks the fact that he was engaged in the commission of a felony—drunk driving—and that article 1241 P. C. is a direct and complete answer to his suggestion that he would be guilty of negligent homicide. Art. 1241 is found in the chapter of the Penal Code relating to homicide by negligence. Other articles in the chapter undertake to set out the elements of negligent homicide, and then as though to exclude any danger of misapprehension we find art. 1241 which reads as follows:

"When one in the execution of or in attempting to execute an act made a felony by law shall kill another, though without an apparent intention to kill, the offense does *not* come within the definition of negligent homicide."

The above quoted article seems to make it clear that appellant would not be guilty of negligent homicide. It, however, by no means supports the view that accused would not be guilty of some higher grade of homicide. The application of article 42 P. C. seems to solve the question.

Appellant's motion for rehearing is overruled.

*Overruled.*