PETE HOUSTON V. THE STATE.

No. 21684. Delivered November 5, 1941.
Rehearing Denied March 4, 1942.

The opinion states the case.

*Grindstaff, Zellers & Hutcheson,* of Weatherford, *J. R. Creighton,* of Mineral Wells, and *Loyd Kennedy,* of Morton, for appellant.

*Sam Cleveland,* District Attorney, of Granbury, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Pete Houston was convicted of murder in the District Court of Palo Pinto County and assessed a penalty of two years in the penitentiary, from which he appeals.

The second count in the indictment alleges that on or about the 21st day of January, 1940, "while under the influence of intoxicating liquor, the appellant drove and operated a motor vehicle upon a public highway and that while thus violating a felony statute he did, through mistake and accident, kill Vera Coleman by causing it to collide with an automobile in which she was riding, thereby jarring and bruising the body of her, said Vera Coleman," from which she died. The appellant lived in the town of Morton, Cochran County, and had driven a part of the previous night and the day on the highway from Lubbock towards Mineral Wells in a truck, attached to which was a trailer. Some time in the early afternoon he collided with a Buick automobile heavily loaded with several negroes, under conditions substantially as follows, as indicated by the evidence in the case:

Appellant was on a winding highway and was at least a part of the way across the center line to the left side when he discovered the automobile he was meeting. He pulled to his right, but, as he passed, his trailer struck the automobile which had stopped and pulled to one side. The car was demolished from the radiator to the rear fender. The left front wheel was torn off. Practically all of the occupants of the car were injured seriously. Vera Coleman, who occupied the left portion of the rear seat was killed, apparently instantly.

Upon leaving Lubbock appellant took with him a woman passenger, according to previous arrangements, it being ex-

plained that she wanted to visit relatives in Waco. She testified that when she saw appellant in the earlier part of the night, or evening before, he was drinking; that he took a drink before leaving; that she saw him take another before reaching the town of Albany, where they had lunch, and that both she and appellant drank a bottle of beer there. Later, and just before the collision, he met a friend on the road who got into the truck with them and proceeded towards Mineral Wells. She had slept most of the way and was alseep in the truck when the accident occurred so that she was not in position to say how much appellant did drink. Prior to the accident he and his friend took a half pint bottle out of the glove compartment, which was about half full of whiskey, and each took a drink out of it. Being awakened by the accident, she asked what had happened and appellant said that a car had scraped his truck, or something to that effect. After going down the highway several miles appellant drove his truck and trailer off on a side road to a dead-end for the purpose, as he explained, of straightening up. In an effort to prevent identification he took the side boards down and placed them flat on the truck. After doing so, and after a period of time not definitely stated, he turned around and started back to the highway when he met an officer who put him under arrest and carried him to Mineral Wells. This officer testified that appellant was under the influence of intoxicating liquor perceptibly when he met him at this point. Several officers who saw appellant a short while thereafter at Mineral Wells reached the same conclusion.

An undertaker was called to the scene of the accident and helped to release the parties from the wrecked automobile. Vera Coleman was dead. He says the back seat was shoved in the back part of the trunk. He saw injuries on the girl. Her arm was badly mangled. It appeared to him that something had hit the Buick car from the left side and thrown the car against the guard rail with such force as to damage the guard rail.

Appellant has filed his brief in this cause in the form required for civil cases and sets up ten assignments of error. Again, as frequently, we are forced to seek from the bills of exception in the case the matters for consideration without the most effective aid from counsel's brief because we are not concerned with assignments of error.

The first bill of exception is taken to the failure of the court to instruct the jury to return a verdict of not guilty. The facts

hereinabove stated amply sustain the action of the court in refusing to give the instruction requested.

Bill of exception number two complains of the failure of the court to give a requested instruction, which in our view is amply covered by the general charge. The same is true of bill of exception number three which is very similar.

Bill of exception number four complains of the refusal of the court to grant requested charge number four to the effect that even though they believed and found from the evidence that defendant was intoxicated while operating his car at the time of the collision he, nevertheless, would not be guilty of murder if he was operating the same in a manner in which it would be operated by one not intoxicated. The fault of this charge is apparent. It placed too great a burden on the person on trial. Paragraph seven of the main charge directs an acquittal if the jury found from the evidence that appellant, at the time of the collision, was driving his car in a manner such as a person not under the influence of intoxicating liquor would operate it, adding: "Or if you have a reasonable doubt thereof, you will give the defendant the benefit of any such doubt and acquit him." This charge was sufficient. Norman v. State, 52 S. W. (2d) 1051; Burton v. State, 55 S. W. (2d) 813; Moynahan v. State, 146 S. W. (2nd) 376.

Appellant's sixth bill of exception complains of the failure of the court to give his requested charge which, in our opinion, is covered by paragraphs four, five and six of the main charge.

Bill of exception number seven complains of the refusal of the court to give his special requested charge number seven, reading in part as follows:

"If you believe from the evidence that the defendant, Pete Houston, was driving on the right hand side of the road and that the trailer on defendant's said truck swung out by reason of the curve in the road at said place, thereby striking the car in which the deceased, Vera Coleman, was riding or if you have a reasonable doubt as to this, you will find the defendant not guilty."

We find no evidence upon which to base this instruction. It is not contended by appellant or any witness in his behalf that he was driving on the right hand side of the road. He admits that he was driving to the left, but immediately swerved

to the right. It is admitted that his trailer struck the car which he was meeting and it is not denied that that car was on its proper side of the highway. There is evidence, without dispute, that the right wheels were entirely off of the pavement and on the gravel. The fact that appellant's truck, being driven on the left hand side, was immediately swung to the right, causing a portion thereof, to-wit, the trailer, to remain on the left and strike the car would not justify the instruction requested.

Bill of exception number eight complains of the failure of the court to give a special requested charge directing an acquittal if they found that the collision was due to some defect or breakage in the trailer unknown to the defendant. We are unable to find any evidence in the case authorizing submission of this issue.

Likewise, bill of exception number nine complains of the failure of the court to submit unavoidable accident. No evidence in the record would sustain such finding.

Bill of exception number eleven complains of the failure of the court to instruct the jury that the State will be bound by an exculpatory statement made by appellant in his voluntary statement given at the time of his arrest. Considered in its entirety, appellant's statement would not relieve him from liability. He did say that the Buick automobile struck his trailer, but he placed himself on the wrong side of the road and his trailer in position, even according to his own theory, where the collision would be as much his fault if struck by the approaching car as if he used different language to describe the same thing and had said that his trailer struck the automobile. The real effect of the statement is not exculpatory and need not have been submitted as an issue for the jury.

A number of bills of exception complain of the failure of the court to submit special charges instructing the jury that they could not convict appellant of the offense of driving intoxicated, and other crimes. We do not deem it appropriate that the court do this inasmuch as such crimes were not charged in the indictment and not submitted to the jury by the general charge any more than it would have instructed them that they could not find him guilty of any other offense defined by law.

Other bills complain of the court's charge. Our attention has been directed to them, but we do not think that the charge is susceptible to the objections lodged against it.

Appellant timely filed a motion to quash the count of the indictment under which conviction is had. Such motion was overruled and the court's action is assigned as error. The complaint seems to be that the charge, "While under the influence of intoxicating liquor, is too vague, indefinite and uncertain to charge an offense against the laws of the State of Texas and is violative of the constitution requiring the State to apprise the defendant of the offense of which he is charged." This question has been passed upon in an opinion by Judge Lattimore in Nelson v. State, 261 S. W. 1046, and has been consistently followed by this court. Maedgen v. State, 104 S. W. (2d) 518; Compton v. State, 109 S. W. (2d) 761. These authorities have dealt with the matter at length, fully answering all contentions made by appellant, and effectively relieves the court from a further discussion of the subject at this time. Anything that might be said would only be a repetition of what the court has written in the authorities cited.

At the conclusion of the testimony appellant moved for an instructed verdict on the theory that the evidence did not show that Vera Coleman died as a result of any injury inflicted upon her by defendant and that it did not show, "that she died as a result of jarring and bruising the body of the said Vera Coleman, causing her death." We have heretofore summarized the evidence which sufficiently raises the issue. It was said that she was alive before the collision. Immediately thereafter she was dead. She was pulled out of a wrecked car which had been thrown against the guard rail. Her body was bruised and her arm was mangled. What more was needed to submit the issue to the jury?

It has also been presented, at least inferentially, that because the accident occurred on a double curve in the highway greater laxity should be indulged toward appellant. We see no reason for such rule and none has been advanced. The statute fixes the crime which this court must consider and there is nothing in the act which made it a felony that would direct any more consideration for carelessness on a dangerous road than it does on any other character of highway.

By supplemental brief appellant contends that inasmuch as

the Regular Session of the 47th Legislature, by House Bill No. 73, made a change in the law regulating drunk driving, that Article 802 of the Penal Code has been repealed and reinstated as a complete new statute, substituting a different law and concluding thereby that this prosecution could no longer be had and that the case should be reversed and ordered dismissed. We do not so view the effect of the act. It was but an amendment of the existing law which reduced the penalty for driving while intoxicated and was not a repeal of the previously existing law, which is still in force. The act contains a specific provision defining murder without malice where a homicide results from a collision by one driving a motor vehicle on a highway while intoxicated. If appellant had committed the same act before the effective date of House Bill No. 73, he would be guilty of MURDER WITHOUT MALICE and subject to a penalty of five years in the penitentiary. Had he committed it after the effective date of House Bill No. 73, he would be guilty of MURDER WITHOUT MALICE and subject to the same penalty. The theory of his guilt has been changed but the same penalty and the same offense is defined and applies to the same act for which he is being tried. Under the former circumstances, he would be guilty of murder without malice because he committed the homicide while committing a felony. Presently, he would be guilty of murder without malice under House Bill No. 73, not because the homicide took place while he was committing a felony but because it took place while he was driving an automobile upon the public highway while intoxicated. (Section c, Article 802, P. C., as amended by House Bill No. 73, Regular Session of the 47th Legislature.) For further reasoning see Hubbard v. State, 4 S. W. (2d) 971; Franklin v. State, 44 S. W. (2d) 996; Sharp v. State, 94 S. W. (2d) 177; Tadlock v. State, 139 S. W. (2d) 796. Following these authorities, we conclude that a person who has not been tried at the effective date of the new law would nevertheless be guilty of murder under the facts of this case, which would be admissible under the allegations in the indictment, because there was but an amendment of the existing law and not a repeal of it, and Article 13 of the Penal Code would govern.

Appellant has cited Kenyon v. State, 23 S. W. 191, as authority for the proposition that when a case is appealed the appellate court must dispose of the case under the law in force when its decision is rendered. Judge Cooley, in his "Constitutional Limitations," (4th Ed.) p. 477, made this pronouncement which, as a general principle, is accepted. However, we

must look to our own statutes for the specific question here involved and we think that Articles 13 to 17, Vernon's Ann. Tex. P. C., makes clear the proposition under consideration. If the general rule stated by Judge Cooley were applicable to the facts of this case, our statutory enactments, being to the contrary, would prevail. What he has said applies appropriately under our statutes and the holdings of this court where the law has been repealed without any saving clause, as was the case under consideration by Judge Davidson in writing his opinion in the Kenyon case. By reason of the provisions of House Bill No. 73, a formal saving clause is not necessary. The purpose and effect are clear.

We have given every consideration to the facts and circumstances of the case that would, in any way, affect the complaints which the record brings to us, and are unable to discover from it any error that would warrant a reversal of the case. Every conceivable question has been presented to us in an effective manner. We have given each due consideration and have concluded that the judgment of the trial court should be affirmed. It is accordingly so ordered.

### ON MOTION FOR REHEARING.

DAVIDSON, Judge.

To properly consider certain matters urged by appellant in his motion for rehearing, it is deemed pertinent to state the following facts not set out in our original opinion:

The witness Ganelle Brashier, the young lady who was riding in appellant's truck, and who was asleep at the time of the collision, testified, upon direct examination by the State, that the collision awakened her; that she asked appellant what happened, to which he replied, among other things, that a car had run into them; that appellant then started to stop his truck, whereupon she suggested that he drive on, as it appeared to her that there was not room for another car to pass at that point on the highway; that appellant then drove on; that she then saw some whiskey in the truck, which she started to throw away, whereupon appellant told her not to throw it away; and that appellant and Barker (another passenger in the truck) drank the whiskey.

The State offered in evidence the voluntary confession of appellant, in which he made the statement that the car in which

deceased was riding had hit his truck. The confession also contained statements showing the drinking of whiskey after the collision by appellant and his companion.

Appellant, testifying as a witness in his own behalf, said that the collision occurred as a result of the car in which deceased was riding having skidded into and hit his truck. He admitted having drunk the whisky after the accident. His arrest occurred after this drinking of the whisky. The State's case was replete with the testimony of arresting officers that, at the time of his arrest, appellant was under the influence of intoxicating liquor.

Appellant renews his contention that, under the foregoing facts, the State was under the burden of disproving the exculpatory statement in the confession to the effect that the car in which deceased was riding ran into and collided with his truck, and that he was entitled to have the jury so instructed. Note is to be taken of the fact that the trial court instructed the jury that if they entertained a reasonable doubt as to whether the deceased's car ran into or collided with appellant's truck, to acquit him. It is now a well-recognized exception to the rule requiring a charge on exculpatory statements that such a charge is not required where the accused testifies and his testimony corresponds to the exculpatory statement put in evidence by the State and the defensive issue arising from his testimony is fairly submitted to the jury. Yarbrough v. State, 125 Tex. Cr. R. 304, 67 S. W. (2d) 612; Otts v. State, 135 Tex. Cr. R. 28, 116 S. W. (2d) 1084. Such facts bring this case within the exception stated, and the trial court was not required to charge the jury in accordance with appellant's request.

In submitting the case, the trial court made appellant's guilt to depend upon the jury's finding, among other things, that the appellant was driving his truck on a public highway while under the influence of intoxicating liquor; and, in connection with such charge, the jury was instructed that, "Before you would be authorized to convict the defendant in this case, you must find and believe from the evidence beyond a reasonable doubt: FIRST, that the defendant, Pete Houston, on the occasion in question was under the influence of intoxicating liquor, * * *."

Appellant insists that such charge was too restrictive of his rights in that, by the use of the words "on the occasion in

question," the jury was authorized to take into consideration the fact that whiskey was drunk by him after the accident and before his arrest. In consequence of that contention, appellant requested a charge to the effect that the question of his intoxication was to be determined "at the very time of the collision." We are unable to agree that, under the charge as given, the jury, in determining whether or not appellant was intoxicated, could have reached the conclusion that they could take into consideration the fact that he drank some whisky after the accident. The trial court's failure to give appellant's requested charge did not, therefore, constitute reversible error.

Appellant insists that he was entitled to have a charge upon negligent homicide. The trial court's refusal to so charge is sustained by the case of Jones v. State, 75 S. W. (2d) 683, 127 Tex. Cr. R. 227.

We have again examined the facts, and fail to find therein any evidence that the accident was the result of any mechanical defect in the truck or trailer prior to the collision, or that the facts raised the issue of unavoidable accident. We adhere to our original conclusion that Chapter 507, House Bill 73, Acts of the Regular Session of the 47th Legislature, 1941, amending Art. 802, P. C., did not operate so as to nullify this conviction or to repeal the law upon which the conviction is predicated.

Being unable to agree with appellant, the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.