COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JOE MENDOZA,                                             )                  No. 08-04-00369-CR
)
                                    Appellant,                        )                              Appeal from
)
v.                                                                          )                  109th District Court
)
THE STATE OF TEXAS,                                   )                  of Andrews County, Texas
)
                                    Appellee.                          )                  (TC# 4569)

O P I N I O N

            Joe Mendoza appeals his conviction of felony murder arising from a fatal automobile
accident. The trial court sentenced Mendoza to fifty years’ confinement. We affirm. 
FACTUAL SUMMARY
            On June 9, 2003, Trevor Lightfoot and Sarah Saplis were traveling southbound in a Mazda
vehicle on FM 1788. Appellant was traveling northbound when his Ford Explorer veered out of its
lane, crossed the center stripe, and crashed head on into the Mazda. The Explorer came to rest a few
feet away on its side. The impact from the crash killed both Lightfoot and Saplis, and left Appellant
trapped inside his vehicle. 
            The paramedics and fire department arrived on scene at approximately 3:50 a.m. Having
determined both passengers inside the Mazda vehicle were deceased, they proceeded to extricate
Appellant from the Explorer. Paramedics Derek Melton and Juan Galindo, and Officer Bo Baker
noticed Appellant’s breath smelled like alcohol. At 4:19 a.m., Appellant was transported to the
Midland Memorial Hospital emergency room where he was treated by Dr. Thomas Allen. Dr. Allen
also noticed Appellant’s breath smelled like alcohol, and based on the results of blood testing,
diagnosed Appellant with acute intoxication. 
            Patrol Sergeant Jay Webster was dispatched by police to the hospital. He observed that
Appellant’s eyes were red and glossed over and that he smelled like alcohol. Another blood sample
was drawn at 4:53 a.m. and Officer Webster placed Appellant under arrest for driving while
intoxicated. This sample was analyzed by the DPS lab and indicated Appellant had a blood alcohol
content of .20 percent. 
            Appellant was indicted for the felony murder of Trevor Lightfoot. The underlying felony
offense was felony DWI inasmuch as Appellant had two prior misdemeanor DWI convictions. 
Appellant was found guilty by a jury and the trial court assessed punishment at fifty years’
confinement.
FELONY MURDER PREDICATED ON FELONY DWI
            We begin our analysis with Point of Error Two. After Appellant was indicted for felony
murder, he filed a motion to quash the indictment.


 He argued that he should have been charged with
either intoxication manslaughter or manslaughter because his actions did not meet the definition of
murder. On appeal, he contends the State was attempting to merge the offense of manslaughter with
felony murder. He also claims the indictment is insufficient because the State failed to allege the
mental state of “knowingly or intentionally.”
Standard of Review
            The sufficiency of an indictment is a question of law. State v. Moff, 154 S.W.3d 599, 601
(Tex.Crim.App. 2004). When the resolution of a question of law does not turn on an evaluation of
the credibility and demeanor of a witness, then the trial court is not in an appreciably better position
to make the determination than an appellate court. Id. Thus, we review the sufficiency of an
indictment de novo. Id.; State v. Meadows, 170 S.W.3d 617, 619 (Tex.App.--El Paso 2005, no pet.).
Statutory History
            Under Article 42 of the 1925 Penal Code, a person was convicted of murder if: 
One intended to commit a felony and who in the act of preparing for or executing the
same shall through mistake or accident do another act which, if voluntarily done,
would be a felony, shall receive the punishment affixed to the penalty actually
committed.


 

In 1934, the Court of Criminal Appeals determined that a defendant was properly indicted under
Article 42 after he killed someone when driving while intoxicated. Jones v. State, 127 Tex.Crim.
227, 75 S.W.2d 683, 686 (1934). It rejected the defensive argument that Article 42 did not apply
because Article 1149 was a special statute dealing with death by automobile. Article 1149 provided: 
If any driver or operator of a motor vehicle or motorcycle upon the public highways
of this State shall wilfully, or with negligence, as is defined in this title in the chapter
on negligent homicide, collide with or cause injury less than death to any other
person upon such highway, he shall be held guilty of aggravated assault and shall be
punished accordingly unless such injuries result in death, in which event he shall be
dealt with under the general law of homicide. 


The court rejected this argument because Article 1149 failed to take into account that the death
occurred during the commission of a felony. Id. The court also rejected the argument that the
defendant should have been indicted for negligent homicide because driving while intoxicated is
negligence per se. Id. Because the defendant he had engaged in the commission of a felony--driving while intoxicated--Article 42 was applicable. Id. at 687-88. 
Distinctions between Felony Murder and Manslaughter
            In 1941, the Texas Legislature reduced a first offense driving while intoxicated from a felony
to a misdemeanor. Houston v. State, 143 Tex.Crim. 460, 158 S.W.2d 1004, 1008 (1941); Johnson
v. State, 153 Tex.Crim., 59, 216 S.W.2d 573, 577 (Tex.Crim.App. 1949); H.C. Lind, Annotation,
Homicide by Automobile as Murder, 21 A.L.R.3d 116, 136 § 6[b] (1968). Article 802c provided:
Any person who drives or operates an automobile or any other motor vehicle upon
any pubic road or highway in this State, or upon any street or alley or any other place
within the limits of an incorporated city, town or village, while such person is
intoxicated or under the influence of intoxicating liquor, and while so driving and
operating such automobile or other motor vehicle shall through accident or mistake
do another act which if voluntarily done would be a felony, shall receive the
punishment affixed to the felony actually committed.




The legislative purpose for Article 802c was to “make specific application to the first offense of
drunk driving” because Article 42 only applied to felony offenses. Johnson v. State, 153 Tex.Crim.
59, 216 S.W.2d 573, 577 (Tex.Crim.App. 1948).
            In Houston, the defendant argued that prosecution under Article 802c was precluded because
by enacting the new statute, the Legislature had created a different law. Houston, 158 S.W.2d at
1008. The Court of Criminal Appeals concluded that the addition of Article 802c did not repeal
Article 42 but was instead an amendment. Id. The court found that under the former statute, the
defendant would have been guilty of murder without malice because he committed a homicide while
committing a felony. Id. But under the new provision, he would also be guilty of murder without
malice because although the homicide did not occur during the commission of a felony, it did occur
while he was driving while intoxicated on a public highway. Id. The court thus distinguished
between the commission of a felony that results in a homicide and a homicide occurring as a result
of misdemeanor driving while intoxicated. 
Felony Murder Today
            Today, the felony murder statute is located in Section 19.02(b)(3) of the Penal Code.


 A
person commits the offense of felony murder if he commits or attempt to commit a felony, other than
manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate
flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous
to human life that causes the death of an individual. Tex.Penal Code Ann. § 19.02(b)(3)(Vernon
2003).
            The Court of Criminal Appeals has clarified the felony murder doctrine and its application
in two recent cases. In Johnson v. State, 4 S.W.3d 254 (Tex.Crim.App. 1999), the court considered
whether a defendant may be convicted for felony murder where the underlying felony of injury to
a child constituted the same acts as those required to prove “act[s] clearly dangerous to human life.” 
The defendant argued that because the underlying offense required the same acts to have been proven
as the felony murder, the merger doctrine prohibited a conviction. Id. at 255. This argument was
predicated on Garrett v. State, 573 S.W.2d 543, 544 (Tex.Crim.App. 1978). There, the defendant
was convicted of felony murder based upon the underlying felony of aggravated assault. The court 
held most voluntary manslaughter cases are initiated as aggravated assaults. If the Court were to
allow felony murder to be based upon aggravated assault, the statutory restriction in felony murder
prohibiting an underlying felony to be based on manslaughter could be regularly circumvented. Id.
at 546. Because the acts constituting the aggravated assault and the acts resulting in the homicide
were the same, there must be an additional showing of felonious conduct other than assault for there
to have been a felony murder. Id. at 546.
            The Johnson court rejected this argument, limiting Garrett to its facts and announcing that
there is no general “merger doctrine” in Texas. The court also disavowed its decision to require a
showing of other felonious criminal conduct besides the underlying felony that caused the death. 
Johnson, 4 S.W.3d at 258. In the wake of Johnson, Garrett now stands only for the proposition that
a conviction for felony murder under Section 19.02(b)(3) will not lie when the underlying felony is
manslaughter or a lesser included offense of manslaughter. Id. 
            The court revisited the issue in Lawson v. State, 64 S.W.3d 396 (Tex.Crim.App. 2001). 
There, the defendant contended that he could not be prosecuted for felony murder because the
aggravated assault was the same act that killed the victim. In essence, the issue was whether an
“intentional and knowing” aggravated assault was a lesser included offense of manslaughter. Id. at
397. Applying Johnson, the court concluded that aggravated assault is not a lesser included offense
of manslaughter. Id. 
Is Felony DWI a Lesser-Included Offense of Manslaughter?
            Felony murder is precluded when the underlying felony is manslaughter or a lesser included
offense of manslaughter. Consequently, we must first determine whether felony DWI is a lesser
included offense of manslaughter. An offense is a lesser-included offense if: 
(1) it is established by proof of the same or less than all the facts required to establish
the commission of the offense charged;
 
(2) it differs from the offense charged only in the respect that a less serious injury or
risk of injury to the same person, property, or public interest suffices to establish its
commission;
 
(3) it differs from the offense charged only in the respect that a less culpable mental
state suffices to establish its commission; or
 
(4) it consists of an attempt to commit the offense charged or an otherwise included
offense. 

Tex.Code Crim.Proc.Ann. art. 37.09 (Vernon 1981).

            Conviction of felony DWI requires proof that (1) the person was intoxicated while operating
a motor vehicle in a public place and (2) the person has previously been convicted either of the
offense of intoxication manslaughter or convicted two times of any other offense relating to the
operation of a motor vehicle while intoxicated. Tex.Penal Code Ann. § 49.04(a) & (b)(Vernon
2003); Tex.Penal Code Ann. § 49.09 (b)(Vernon Supp. 2006). A person commits manslaughter
if he recklessly causes the death of an individual. Tex.Penal Code Ann. § 19.04(a). Because the
State is required to prove different elements for the offense of felony DWI than manslaughter, felony
DWI is not a lesser-included offense of manslaughter.


 
            Having determined that felony DWI is not a lesser-included offense of manslaughter, we
conclude that felony DWI may be the underlying felony for the offense of felony murder. Johnson,
4 S.W.3d at 255 (under the plain language of felony murder, any felony can serve as the underlying
felony, with the exception of manslaughter). Our conclusion is consistent with a recent opinion of
our sister court. See Strickland v. State, No. 02-04-00557-CR, slip op. *3-4, 2006 WL 820386
(Tex.App.--Fort Worth, Mar. 30, 2006, no pet. h.).
Culpable Mental State?
            Appellant next contends the State failed to prove an “intentional or knowing” culpable
mental state. A charge of felony murder does not itself require proof of mens rea; instead, the
underlying felony supplies the culpable mental state. Johnson, 4 S.W.3d at 255, citing Garrett, 573
S.W.2d at 545; Hilliard v. State, 513 S.W.2d 28, 33 (Tex.Crim.App. 1974)(intent to kill under
Article 42 is supplied by the intent to commit the felony). If any felony other than manslaughter can
serve as the underlying felony, then any mental culpability from the underlying felony can support
a conviction for felony murder.


 In this instance, felony DWI does not require proof of culpable
mental state. Tex.Penal Code Ann. § 49.11(a); Ex parte Ross, 522 S.W.2d 214, 215-17
(Tex.Crim.App. 1975); Aliff v. State, 955 S.W.2d 891, 892-93 (Tex.App.--El Paso 1997, no pet.). 
Point of Error Two is overruled.
 

SUFFICIENCY OF THE EVIDENCE 
            In his first point of error, Appellant contends there was insufficient evidence to support the
verdict. He argues that no witness ever established he was intoxicated or under the influence of any
intoxicating substance at the time of the accident because no one could testify with reasonable
certainty as to the time the accident occurred. Instead, he claims the evidence established that he had
fallen asleep.


 
Standard of Review
            In a legal sufficiency review, we must consider the evidence in the light most favorable to
the verdict to determine whether any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). We do
not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier
of fact to do so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the
explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted
at trial in a light most favorable to the verdict. Adelman, 828 S.W.2d at 422. We resolve any
inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at 843. Because the trier
of fact is in the best position to review the evidence first hand we must give due deference to the trier
of facts determinations regarding the weight and credibility of the evidence. Matson v. State, 819
S.W.2d 839, 843 (Tex.Crim.App. 1991), citing Moreno v. State, 755 S.W.2d 866, 867
(Tex.Crim.App. 1988); Johnson, 23 S.W.3d at 9; Tex.CodeCrim.Proc.Ann. art. § 38.04 (Vernon
1979).
            In reviewing factual sufficiency, we must determine whether after reviewing all the evidence
in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga
v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). Evidence is factually insufficient if the
evidence, considered by itself, is too weak to support the verdict, or contrary evidence is so strong
that the verdict of guilt beyond a reasonable doubt could not have been proven. Id. at 484-85. Due
deference will also be given to the jury’s determination regarding weight and credibility of the
witness’s testimony. Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). A judgment will
not be set aside unless the evidence supporting the verdict is so weak as to render it clearly wrong
or manifestly unjust. Zuniga, 144 S.W.3d at 481. A clearly wrong and manifestly unjust verdict
occurs where the jury’s findings “shocks the conscience” or “clearly demonstrates bias.” Id. 
The Evidence at Trial
            Appellant argues there was no evidence presented as to the amount of alcohol in his system
at the time of the accident because retrograde extrapolation was not conducted on the blood sample
taken.


 In support of this argument, he relies upon Stewart v. State, 103 S.W.3d 483, 486
(Tex.App.--San Antonio 2003), rev’d, 129 S.W.3d 93 (Tex.Crim.App. 2004). However, the Court
of Criminal Appeals reversed Stewart, holding that the admission of breath tests were admissible
without the use of retrograde extrapolation evidence. Stewart, 129 S.W.3d. at 97. A jury is not
required to establish the defendant’s blood alcohol level at the time of the accident in order to
convict a person of DWI. Id. at 97. Instead, the jury need only believe beyond a reasonable doubt
that either: (1) the defendant’s blood alcohol level was .10 or more, or (2) the defendant failed to
have the normal use of his/her mental or physical faculties by reason of introduction of alcohol into
their body at the time they drove. Id. at 97 .
            Appellant next argues there was no evidence as to the amount of alcohol in his system
because testimony could not establish the time the accident occurred. The precise time of the
accident is not the sine qua non of driving while intoxicated. Layland v. State, 144 S.W.3d 647,
651-52 (Tex.App.--Beaumont 2004, no pet.), citing Zavala v. State, 89 S.W.3d 134, 139 (Tex.App.--Corpus Christi 2002, no pet.). What must be established is a “link” between the driving and
intoxication from which the factfinder can conclude that at the time of the offense, the driver was
intoxicated. Id. 
            There was sufficient evidence to link Appellant’s driving and his intoxication. Appellant
informed a paramedic that the accident occurred thirty-minutes before anyone arrived at the scene. 
One of the first witnesses arrived at 3:30 a.m. Appellant--the sole occupant--was found trapped
inside the vehicle on the driver’s side. Police and paramedics at the scene, as well as the emergency
room physician, smelled alcohol on his person. Blood was drawn at 4:19 a.m. from which the doctor
diagnosed acute alcohol intoxication. Blood was drawn again at 4:53 a.m. and the lab results
indicated a blood alcohol content of .20. An assessment of the scene suggested Appellant drove into
the oncoming lane of traffic and did not brake to avoid the collision. There was no evidence to
indicate Appellant had anything to drink following the collision. In viewing the evidence in the light
most favorable to the verdict, we must conclude that there is legally sufficient evidence to support
the jury’s verdict. 
            Appellant then complains that the evidence is factually insufficient because he established
that he had fallen asleep. When viewed in a neutral light, we do not find this contrary evidence to
be so strong that the verdict of guilt beyond a reasonable doubt could not have been proven. Zuniga,
144 S.W.3d at 484-85. Nor do we find the evidence in support of the verdict so weak that renders
the verdict clearly wrong or manifestly unjust. Id. at 481. We overrule Point of Error One. 
RIGHT OF CONFRONTATION 
            In Point of Error Three, Appellant complains that he was unable to cross-examine the
pathologist who prepared the autopsy report in violation of the Sixth Amendment. Dr. Robert Lyons
prepared the autopsy report but it was never admitted into evidence. Despite a subpoena from the
State, Dr. Lyons did not appear at trial because he had moved out of state. Instead, the State called
Dr. Sridhar Natarajan, the Chief Medical Examiner for Lubbock County, who based his opinions
about Lightfoot’s death on Dr. Lyons’ report. 
            In his brief, Appellant cites only to the Sixth Amendment and fails to support his argument
with any authority. Consequently, he has not preserved this issue for review. Tex.R.App.P. 38.1(h)
(the brief must contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record). Even assuming preservation of error, we would
nevertheless determine that Appellant’s right of confrontation was not denied. Mitchell v. State,
2005 WL 3477857, at *2 (Tex.App.--San Antonio 2005, pet.ref’d)(medical examiner’s opinion
based on the autopsy report of another doctor who was unavailable to testify was not a violation of
defendant’s confrontation rights). Point of Error Three is overruled. 
 

ADMISSIBILITY OF BLOOD SAMPLE RESULTS
            In his fourth point of error, Appellant contends the trial court erred in admitting blood test
results because they were only intended for medical purposes and he was never informed of the
possible consequences. Two blood samples were taken from Appellant. The first was taken for
medical assessment because the attending physician needed to know how much alcohol he had
consumed in order to proceed with proper medical treatment. After receiving the results from the
blood work, Dr. Allen diagnosed Appellant with acute alcohol intoxication. The State presented this
information in Exhibit #33 which was a compilation of Appellant’s medical records. Appellant
objected because it was labeled Drug Screen/Alcohol Testing. The State responded that it did not
intend to offer the exhibit. Because the results of the first sample were never admitted into evidence,
the record does not support Appellant’s argument that the blood test was used for law enforcement
purposes.
            The second sample, which Appellant contends was also drawn solely for medical purposes,
was taken by a hospital nurse at 4:53 a.m. Sergeant Jay Webster informed Appellant a nurse would
be drawing some blood before his CT scans. Afterward, Sergeant Webster read Appellant his
statutory warning and informed him he was under arrest for driving while intoxicated. The warning
indicated that Webster had requested a blood specimen and that Appellant had already provided a
sample. The DPS lab results were admitted into evidence as Exhibit #34.
            As a general rule, an appellant must make a timely and specific objection at trial in order to
preserve error for appeal. Geuder v. State, 115 S.W.3d 11, 13 (Tex.Crim.App. 2003); Tex.R.App.P.
33.1. The complaint made on appeal must comport with the objection made at trial. Trevino v.
State, 991 S.W.2d 849, 855 (Tex.Crim.App. 1999). When the State offered Exhibit #34 into
evidence, Appellant objected, “Okay, on thirty-four and thirty-nine, I had previously indicated an
objection because the nurse was not here and I do want to keep that objection reserved insofar as the
vial and the Court is concerned, but other than that I have no objection.” Because the objection at
trial does not relate to his issue on appeal that statutory warnings were not given, Appellant has
failed to preserve the issue for our review. We overrule Point of Error Four. 
IMPROPER JURY ARGUMENT
            Finally, Appellant complains of improper jury argument. In order to preserve an error
regarding an improper jury argument, an appellant must make a timely and specific objection at trial. 
Tex.R.App.P. 33.1; Mathis v. State, 67 S.W.3d 918, 927-28 (Tex.Crim.App. 2002); Cockrell v.
State, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996), cert. denied, 520 U.S. 1173, 117 S.Ct. 1442, 137
L.Ed.2d 548 (1997). Because Appellant failed to do so, we overrule Point of Error Five. Having
overruled all issues for review, we affirm the judgment of the trial court.


August 10, 2006                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)